UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOKSMART GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE, LLC, <br><br> Defendant. | Case No. 24-cv-07147-JST <br><br> **ORDER GRANTING DEFENDANT GOOGLE, LLC'S MOTION TO DISMISS** <br><br> Re: ECF No. 37 |

Pending before the Court is Defendant Google, LLC's motion to dismiss Plaintiff LookSmart Group, Inc.'s complaint. ECF No. 37. The Court will grant the motion.

## I.    BACKGROUND

LookSmart accuses Google of infringing U.S. Patent No. 7,356,530 (the "'530 Patent").[1] *See* ECF No. 1 ("Compl."). The '530 Patent is entitled "Systems and Methods of Retrieving Relevant Information" and issued on April 8, 2008. ECF No. 1-1 ("'530 Patent"). The '530 Patent relates to "systems and methods for retrieving relevant information from a large collection of information such as that on the Internet and in particular the World Wide Web." *Id*. at 1:4–7.

LookSmart accuses Google of infringing the '530 Patent by "having manufactured, used, sold, imported, and offered for sale Google Search's technology and services." Compl. ¶¶ 38–54. Google now moves to dismiss the Complaint on grounds that the '530 Patent is directed to a patent-ineligible abstract idea under 35 U.S.C. § 101. ECF No. 37.

---

[1] The Court previously considered the '530 Patent in *LookSmart Grp., Inc. v. Microsoft Corp.*, No. 17-cv-04709-JST. In that case, the Court was not called upon to consider whether the '530 Patent was directed to a patent-ineligible abstract idea.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations need not be detailed, but the facts must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement' it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## III. DISCUSSION

### A. Section 101 Patent Eligibility

Section 101 of the Patent Act defines the scope of patentable subject matter as encompassing "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. It is well settled that "laws of nature, natural phenomena, and abstract ideas are not patentable" because they are "the basic tools of scientific and technological work" *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quotations and citation omitted). Allowing patent claims for laws of nature, natural phenomena,

2

and abstract ideas would "tend to impede innovation more than it would tend to promote it," thereby thwarting the primary object of the patent laws. *Id.* However, the Supreme Court has also cautioned for the need to "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id.* Accordingly, "an invention is not rendered ineligible for patent protection simply because it involves an abstract concept[,]" and courts must distinguish between patents that claim abstract ideas, on the one hand, and patents "that claim patent-eligible applications of those concepts," on the other. *Id.*

The Supreme Court and Federal Circuit have articulated a two-part test for determining whether a claim's subject matter is patent-eligible. First, the court "determine[s] whether a claim is 'directed to' a patent-ineligible abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1346-47 (Fed. Cir. 2014) (citation omitted). Under this first step of the analysis, courts "evaluate the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019) (quotations and citation omitted). If the claims are directed to an abstract idea, the inquiry proceeds to step two. At step two, courts "consider the elements of each claim both individually and as an ordered combination" to determine "whether [the claim] contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 217, 221 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 73, 79 (2012)). "This is the search for an 'inventive concept'—something sufficient to ensure that the claim amounts to 'significantly more' than the abstract idea itself." *Content Extraction*, 776 F.3d at 1347 (citation omitted).

Patent eligibility is appropriately decided on a motion to dismiss "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). Courts in this district, including this Court, have regularly granted motions to dismiss under such circumstances. *See e.g.*, *PlanetID, LLC v. Digify, Inc.*, No. 19-CV-04615-JST, 2021 WL 567371, at *9 (N.D. Cal. Jan. 12, 2021); *W. Digital Techs., Inc. v. Viasat, Inc.*, No. 22-CV-04376-HSG,

3

2023 WL 7739816, at *6 (N.D. Cal. Nov. 15, 2023).

### 1. *Alice* Step One

The Court begins with step one of the two-step *Alice* patent eligibility inquiry, which asks whether the claim is directed to a patent-ineligible abstract idea. At this step, courts consider "what the patent asserts to be the focus of the claimed advance over the prior art." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020).

The '530 Patent "relates to systems and methods for retrieving relevant information from a large collection of information[,] such as that on the Internet and in particular the World Wide Web." '530 Patent at 1:4–7. The '530 Patent describes deficiencies in prior art search engines resulting from "the Web's rapid growth and lack of central organization." *Id*. at 1:17–19; *see also id*. at 2:18–20 ("[T]he Web provides little structure to support retrieval of specific information."). At the time of the '530 Patent, search engines (e.g., Google) existed, but these search engines "pull[ed] up all pages meeting the search criteria, which c[ould] overwhelm the searcher with thousands of irrelevant pages." *Id*. at 3:4–6. As laid out in the specification, "[m]ajor search engines ha[d] a ranking function that w[ould] rank higher those pages having certain keywords in certain locations such as the title, or the Meta tag, or at the beginning of a page[,]" but this ranking function did not "typically put the most relevant page at the top of the list" or "assess the importance of the page relative to other pages." *Id*. at 3:13–20. The specification further explains that "relying solely on the content of the page itself . . . to rank the page c[ould] be a major problem to the search engine[,]" as a "web author c[ould] repeat 'hot' keywords many times . . . to raise the rank of a given page without adding value." *Id*. at 3:20–26.

The claimed invention purports to improve upon prior art search engines by "enabl[ing] the search engine to present the search results in such a way that the most relevant results appear on the top of the list." *Id*. at 4:1–3. Independent claim 1 of the '530 Patent recites:

> 1. A computer-implemented method of ranking the relevancy of pages in a collection of pages including linking hypertext pages, comprising:
>
> crawling the World Wide Web to produce a collection of pages without limitation to topic;

4

>   for each page in the collection of pages, examining a probability of visitors viewing a particular page *to determine a page weight* for said particular page;
>
>   for each of a plurality of selected words, with regard to each of a plurality of selected pages in the collection of pages,
>
>> *determining an intrinsic ranking factor* for use of a selected word on a selected page in the collection of pages by examining content related to the selected word on the selected page to determine a content score and adjusting the content score in accordance with the page weight of the selected page, and
>>
>> *determining an extrinsic ranking factor* for use of the selected word on the selected page by, for each linking page in the collection of pages containing an outbound hypertext link to the selected page, examining text associated with the outbound hypertext link on the linking page related to the selected word to determine an anchor weight for the linking page, adjusting the anchor weight in accordance with the page weight of the linking page and combining the adjusted anchor weights for all linking pages containing an outbound hypertext link to the selected page;
>
>   ranking the selected page for the selected word by combining the intrinsic and extrinsic ranking factors related thereto; and then
>
>   creating a database of the collection of pages indexed by the plurality of selected words, each indexed selected word in the database index associated with pages ranked for said each indexed selected word so that ranked search results are produced in response to a subsequent query which includes one or more of the selected words.

*Id*. cl. 1 (emphasis added).[2]

Google argues that the '530 Patent "claims to improve a user's experience searching for information on a computer by reciting general, non-technical methods of collecting and ranking information[,]" which is a "quintessential abstract idea." ECF No. 37 at 17. LookSmart counters that Google "ignores both the limitations of the[] claims and the specific solutions of the specification . . . ." ECF No. 42 at 13. LookSmart argues that the limitations present in claim 1— "[c]alculating the page weight using a methodology based on probability of the page being viewed by visitors[,]" "[c]alculating an intrinsic ranking factor for certain key words and web pages based on the page weight and key word-related content of a given page[,]" and "[d]etermining an

---

[2] The parties do not dispute that independent claim 1 of the '530 Patent is representative for purposes of patent eligibility. *See* ECF No. 37 at 8; ECF No. 42 at 7 n.2. Accordingly, the Court treats independent claim 1 as representative.

5

'extrinsic ranking factor' for certain key words and web pages based on the page weight of a page and content associated with incoming hyperlinks to that page"—show that the claimed invention is not abstract. *Id*. at 13–14.

The Court finds that the '530 Patent is directed to the abstract idea of "collecting, storing, indexing, and ranking" information. *See* '530 Patent at 4:24–25; *see also id*. 3:50–51 ("The present invention relates to systems and methods of information retrieval."), 4:23–24 ("The present invention relates to retrieving relevant pages from hypertext page collections.")  An examination of claim 1 shows that the claimed method comprises five steps for "ranking the relevancy of pages in a collection of pages." '530 Patent cl. 1.  Without purporting to construe the claims, the steps include: (1) producing a collection of pages; (2) determining a page weight for each page in the collection of pages; (3) determining an intrinsic ranking factor and extrinsic ranking factor for a selected word on a selected page in the collection of pages; (4) combining the intrinsic and extrinsic ranking factors to rank the selected page for the selected word; and (5) creating a database of the collection of pages indexed by the selected words.  Notably, claim 1 does not specify *how* the page weight, intrinsic ranking factor, or extrinsic ranking factor are calculated or how the intrinsic and extrinsic ranking factors are combined.  *See* '530 Patent, cl. 1.  For example, claim 1 states that the intrinsic ranking factor is determined by "*examining content related to the selected word on the selected page to determine a content score and adjusting the content score in accordance with the page weight[,]*" which is calculated by "*examining a probability* of visitors viewing a particular page . . . ." *Id*. (emphasis added).  At no point does claim 1 clarify what it means to "examine content" or "examine a probability," and it is unclear how one is expected to calculate the content score or page weight based on these limitations.  The Court finds claim 1 does nothing more than recite "a desired function or outcome without providing any limiting detail that confines the claim to a particular solution to an identified problem." *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016).  Courts have routinely found that "[t]hese types of activities, i.e. data collection, modeling, and evaluation, constitute 'longstanding conduct that existed well before the advent of computers and the Internet.'" *Brightedge Techs., Inc. v. Searchmetrics, GmbH*, 304 F. Supp. 3d 859, 866 (N.D.

1   Cal. 2018) (citation omitted); *see also Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355,
2   1362 (Fed. Cir. 2023) ("These independent claims are focused on collecting information,
3   analyzing it, and displaying certain results, which places them in the familiar class of claims
4   directed to a patent-ineligible concept."); *Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1044
5   (N.D. Cal. 2023) ("Humans have been previewing data analysis rules on test samples for time
6   immemorial.  The associated organizing, displaying, and manipulating of data are all directed to
7   this abstract idea.").

8   　　　　LookSmart argues that "the '530 Patent specification's focus on the patented invention's
9   improvements over existing search engine technologies demonstrates that the '530 Patent is
10  directed to patentable subject matter." ECF No. 42 at 8–9; *see also id*. at 13 ("Google's assertion
11  that the claims of the '530 Patent have a 'purely functional nature' ignores . . . the specific
12  solutions of the specification . . . ."). LookSmart's reliance on the specification is misplaced for
13  two reasons.  First, courts generally "refuse to import details from the specification if those details
14  are themselves not claimed." *See AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371,
15  1379 (Fed. Cir. 2024).  Second, the specification undermines LookSmart's arguments and in fact
16  confirms the abstract, results-oriented nature of the claims.  The specification explains that
17  "[i]ntrinsic rank is the measure of the importance of a page for a given keyword as claimed by the
18  author of the page" and "[i]mportance can be measured by examining the content of the page."
19  '530 Patent, 6:45–58.  The specification suggests calculating the intrinsic rank by multiplying the
20  content score with the page weight but makes clear that both the content score and page weight
21  "can be calculated in many ways." *Id*. at 6:64; *see also id*. at 7:13–8:19, 6:47–58.  The
22  specification further explains that the "[e]xtrinsic rank is a measure of the importance of a page for
23  a given keyword as indicated by other pages" and can be calculated by multiplying the anchor
24  weight, which "represents the weight given to anchor text found in page b linking to page a for a
25  given keyword K[,]" with the page weight. *Id*. 8:53–9:3.  Like the content score and page weight,
26  "[t]he anchor weight can be set in many different ways." *Id*. at 9:3–4.  "In short, looking at the
27  problem identified in the patent, as well as the way the patent describes the invention, the
28  specification suggests that the invention of the patent is nothing more than the abstract idea of"

7

collecting, storing, indexing, and ranking pages from the World Wide Web. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 768 (Fed. Cir. 2019).

       Viewed in light of the specification, it is clear that claim 1 neither "limits [n]or [] specifies the process by which the generic processes that the claims invoke are to be carried out." *Rearden LLC v. TWDC Enterprises 18 Corp.*, No. 22-CV-02464-JST, 2023 WL 3579324, at *7 (N.D. Cal. Feb. 21, 2023). Both the claims and the specification fail to specify how the intrinsic and extrinsic ranking factors (and the content score, page weight, and anchor weight underlying these factors) are to be calculated.[3] "The purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Affinity Labs of Tex.*, 838 F.3d at 1269. *See also Ginegar LLC v. Slack Techs., Inc.*, 634 F. Supp. 3d 769, 776 (N.D. Cal. 2022) ("Although [plaintiff] identifies an improvement to instant messaging technology . . . it does not explain the specific means or method underlying the improvement. It focuses only on the desired result . . . ."); *Software Rts. Archive, LLC v. Facebook, Inc.*, 485 F. Supp. 3d 1096, 1108 (N.D. Cal. 2020) ("[D]espite [plaintiff's] insistence to the contrary, the claims do not specify how a computer achieves the desired result. The claims instead recite broad functions—'identifying' and 'accessing' hyperjump data, 'identifying' and 'analyzing' URLs, 'displaying' a document, and 'generating' cluster links, among others—which 'provide[ ] only a results-oriented solution.'") (citation omitted); *Valjakka v. Netflix, Inc.*, No. 22-CV-01490-JST, 2023 WL 5420225, at *3 (N.D. Cal. Aug. 22, 2023) ("While claim 10 describes a process obtaining access to restricted content through the use of digital rights management keys, it does not incorporate specific features

---

[3] To the extent LookSmart argues that the specification teaches how to calculate the page weight, content score, and anchor weight, the Court reiterates that the claims themselves do not recite how these variables are calculated. *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) ("[T]he level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method."). Moreover, although the specification describes exemplary embodiments for calculating the content score ('530 Patent, 6:66), page weight (*id*. at 8:10), intrinsic ranking factor (*id*. at 6:57), and extrinsic ranking factor (*id*. at 8:60), these embodiments merely teach the application of mathematical formulas. Courts have routinely found these types of patents to be directed to an abstract idea. *Relevant Holdings, LLC v. MindGeek USA Inc.*, No. 2:21-CV-03174-MCS-KES, 2021 WL 6103350, at *6 (C.D. Cal. Aug. 30, 2021) ("The Federal Circuit has advised[] that it 'treat[s] analyzing information by steps people [could] go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category.'") (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016)).

that limit the claim to a specific process . . . ."); *ChargePoint, Inc.*, 920 F.3d at 767 ("Even a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims, thus preempting all use of that law or idea.").

The Court is also persuaded by Google's comparison to "an attorney doing legal research in an old law library filled with musty volumes of case reports . . . ." ECF No. 37 at 13–14. Google's analogy demonstrates that the '530 Patent "is limited to the technical environment of the Internet and dressed up in technical jargon, requiring a computer to determine 'weights,' 'scores,' and 'ranking factors' to perform this analysis, but that could simply involve assigning numbers (or other values) to these common-sense research concepts." *Id*. at 14. LookSmart argues that Google's analogy "fails because it does not address the same problems as the '530 Patent"—search engines being "trick[ed] . . . by spamming keywords and artificially inflating the number of inbound links to [] web pages." ECF No. 42 at 10. LookSmart misses the larger point: the claims of the '530 Patent do not themselves describe a solution that address "spamming keywords" and "artificially inflating the number of inbound links." LookSmart also argues that Google's analogy fails with respect to the "page weight" limitation, because "[i]t is not possible to use the structure of a physical library to calculate the exact probability that a specific case in a collection of 'musty volumes' will be viewed by a researcher reviewing cases at random." *Id*. But as explained above, claim 1 does not itself teach how to calculate the page weight and instead vaguely states that the page weight can be calculated by "examining a probability of visitors viewing" that particular page.

Moreover, the claims of the '530 Patent are similar to those courts have found to be directed to patent ineligible abstract ideas. For example, in *Relevant Holdings*, the court found that two patents "relate[d] to computerized methods of searching, sorting, and displaying video content according to relevance" were directed to patent-ineligible subject matter. 2021 WL 6103350, at *6. There, the patents at issue "sought to avoid the problems of earlier search engines 'miss[ing] documents which do not contain those specific [search] terms,' inflating rankings, and displaying rankings one dimensionally." *Id*. at *1 (citation omitted). The court rejected the

9

1 plaintiff's argument that the "claimed subject matter improve[d] the back-end functionality of
2 search and database organization functionality to allow the computer networks to rapidly present
3 presorted and ranked content" and found that the claims were directed to an abstract idea. *Id*. at
4 *6. The court explained that the claims were directed to a "method of ranking categories . . . that
5 assign[] a score to each category" using an algorithm and "d[id] not disclose any improvement to
6 computer functionality." *Id*. at *5. The court also noted that the plaintiff "d[id] not identify
7 . . . how performing the algorithm on a computer improve[d] the operation of the computer, and
8 even if it did, where this [improvement] [was] claimed." *Id*.

*Software Rights Archive v. Facebook, Inc.*, although not cited by the parties, is similarly instructive. 485 F. Supp. 3d 1096, 1100 (N.D. Cal. 2020). There, the court found that patents "relate[d] to a research tool for indexing, searching, and displaying data that focuse[d] on the relationship between items" and "identify[ing] problems in then-existing text-based computer search technology [failing to return a desired result because the request was not precisely phrased or producing too many results without any indication as to which result was significant or important]" were directed to the abstract idea of "collect[ing], analy[zing], and display[ing] [] certain information." *Id*. at 1100, 1105. Although the court recognized that the "alleged invention may obtain better search results," it found that the invention "d[id] not represent any direct improvement to computer technology" as the "patents d[id] not detail any efficiency benefits to the computer itself . . . but only point[ed] to improving the search results displayed generically to the user." *Id*. at 1105. The court noted that the claims "rel[ied] on existing types of information—such as Universal Record Locators, hyperlinks, and web objects—and outline[d] a method to analyze relationships between items based on such information, then display the results." *Id*. The court further explained that the claims merely "provide[d] general detail about collecting and analyzing the information on conventional computers" and "thus fit squarely within the 'line of precedent that [] classifies data collection, organization, and analysis as abstract—even where that produces new data—in the absence of a claimed technological improvement.'" *Id*. (quoting *Brightedge Techs.*, 304 F. Supp. 3d at 867).

Here, too, claim 1 of the '530 Patent "do[es] not specify how a computer achieves the

10

desired result" and "instead recite[s] broad functions . . . which 'provides only a results-oriented solution.'" *Software Rts. Archive*, 485 F. Supp. 3d at 1105 (quoting *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017); *see also Brightedge Techs.*, 304 F. Supp. 3d at 870 (finding patents "fail[ed] to show a tangible technological improvement" as "the claim language did not specify how to configure or execute the otherwise undefined 'computer instructions' to perform the claimed method"); *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, No. 2022-1861, 2024 WL 89642, at *5 (Fed. Cir. Jan. 9, 2024) (finding claims were directed to the abstract idea of displaying and organizing information as the claims used "results-oriented language, such as 'receiving a resource response set of results,' 'receiving a user context vector,' 'mapping the user context vector,' and 'controlling the presentation of the resource response set,' without any explanation for how these steps are carried out"); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) ("We have explained that claims focused on 'collecting information, analyzing it, and displaying certain results of the collection and analysis' are directed to an abstract idea . . . . And 'merely presenting the results of abstract processes of collecting and analyzing information, without more . . . is abstract as an ancillary part of such collection and analysis.'").

Having found the '530 Patent is directed to the abstract idea of collecting, storing, indexing, and ranking information, the Court proceeds to step two of the *Alice* inquiry.

### 2. *Alice* Step Two

Step two of the *Alice* inquiry asks "whether the claimed elements—'individually and as an ordered combination'—recite an inventive concept." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 217). "An inventive concept reflects something more than the application of an abstract idea using 'well-understood, routine, and conventional activities previously known to the industry.'" *Id.* Such a concept "must be significantly more than the abstract idea itself, and cannot simply be an instruction to implement or apply the abstract idea on a computer." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016); *see also Savvy Dog Sys., LLC v. Pennsylvania Coin, LLC,* No. 2023-1073, 2024 WL 1208980, at *3 (Fed. Cir. Mar. 21, 2024) (determining that alleged

11

inventive steps "are abstract ideas themselves—whether viewed as part of a set of rules for playing a game or part of a game previewed to the player before committing to playing—and thus cannot be an inventive concept under *Alice* step two.").

The Court finds that the elements of claim 1, both individually and as an ordered combination, do not recite an inventive concept. The individual limitations of claim 1, "recite generic computer, network and Internet components, none of which [are] inventive" on their own. *Bascom*, 827 F.3d at 1349. LookSmart argues that the elements of claim 1 "teach various innovations for overcoming deficiencies in prior art search engines," such as "[u]sing hypertext links and associated content to develop extrinsic rankings for a webpage[,]" "[c]ombining extrinsic rankings with intrinsic rankings to calculate the overall relevance of that webpage for a keyword[,]" and "[p]re-indexing web pages based on these rankings before a user submits a search, to enable 'fast retrieval' of the web pages in response to a search." ECF No. 42 at 13. According to LookSmart, "[e]ach of these innovations improves over then-existing search engine technologies, which used 'more rudimentary methods such as focusing solely on keyword density or simply counting the number of inbound links.'" *Id.* (quoting Compl. ¶ 22). These arguments are not persuasive.

As an initial matter, the '530 Patent recognizes that hypertext links are an inherent feature of the Internet, *see* '530 Patent, 3:27–45, and as such, the use of hypertext links is not necessarily an inventive concept. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) ("[T]he use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101."); *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1319 (Fed. Cir. 2016) ("[P]erforming otherwise abstract activity on the Internet does not save the idea from being patent-ineligible."). Additionally, the language of claim 1 makes clear that the '530 Patent does not utilize hypertext links in an inventive or unconventional manner. Claim 1 states that outbound hypertext links are used to determine the anchor weight and extrinsic ranking factor, but claim 1 does not teach how to use the outbound hypertext link to determine the anchor weight or extrinsic ranking factor. The use of "intrinsic and extrinsic ranking factors to calculate the overall relevance" also does not recite an inventive concept. As explained above, claim 1 does not

1   actually teach how to determine the page weight, content score, anchor weight, intrinsic ranking
2   factor, or extrinsic ranking factor recited in the claim. *See supra* Section III.A.1. LookSmart
3   cannot now rely on these abstract factors to supply the inventive concept. *See BSG Tech LLC v.*
4   *Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("It has been clear since *Alice* that a
5   claimed invention's use of the ineligible concept to which it is directed cannot supply the
6   inventive concept that renders the invention 'significantly more' than that ineligible concept.");
7   *Software Rts. Archive*, 485 F. Supp. 3d at 1111 ("It was precisely this concept that the Court found
8   was directed to the abstract idea of collecting and analyzing the relationship between items at
9   *Alice* step one. Thus, it cannot now serve as the inventive concept.").
10      The Court also finds that the ordered combination of claimed elements does not recite an
11  inventive concept. LookSmart briefly argues that "[i]n combination, the elements of claim 1 teach
12  a method for improving the quality, reliability, and speed of internet search engines . . . ." ECF
13  No. 42 at 15. But LookSmart does not explain how claim 1's combination of elements is
14  inventive or unconventional. *Cf. Bascom*, 827 F.3d at 1351 ("As is the case here, an inventive
15  concept can be found in the non-conventional and non-generic arrangement of known,
16  conventional pieces.").
17      LookSmart attempts to analogize the facts of this case to those in *Wanker v. United States*,
18  146 Fed. Cl. 582 (2020), and *Weisner v. Google, LLC*, 51 F.4th 1073 (Fed. Cir. 2022), but
19  LookSmart's cited authority is distinguishable. In *Wanker*, the court found the plaintiff "ma[d]e
20  concrete factual allegations in the complaint regarding functional improvements considered to be
21  unconventional at the time of the invention, with such improvements being tied *specifically to the*
22  *claims*." 146 Fed. Cl. 582, 600 (2020) (emphasis added). LookSmart has made no such showing
23  here. As the Court has already explained, the alleged improvements described in the '530 Patent
24  specification are not tied to the claims themselves. *See supra* Section III.A.1. *Wanker* is further
25  distinguishable, as the plaintiff in that case set forth factual allegations explaining how the claimed
26  invention improved the speed and efficiency of existing database systems. *Id.* at 601.
27  LookSmart's allegations regarding the '530 Patent's alleged improvements over existing prior art
28  search engines, Compl. ¶¶ 23–27, fall far short of the factual allegations in *Wanker*.

13

Similarly, in *Weisner v. Google LLC*, the Federal Circuit found that patents directed to a method and system of combining enhanced computerized searching "plausibly capture[d] an inventive concept in the form of a *specific technique* for using physical location history data to improve computerized search results." 51 F.4th 1073, 1086 (Fed. Cir. 2022) (emphasis added). The Federal Circuit explained that the patents claimed "more than just the concept of improving a web search using location history" and claimed "a specific implementation of that concept." *Id*. Claim 1 of the '530 Patent, however, does not capture a "specific technique" for ranking the relevancy of pages. *See supra* Section III.A.1. Accordingly, the Court finds that the individual and ordered combination of elements in claim 1 fail to recite an inventive concept reflecting more than the abstract idea of collecting, storing, indexing, and ranking information.

## B.  Leave to Amend

Google requests that the Court dismiss LookSmart's complaint with prejudice. ECF No. 37 at 11, 25. While the Court is skeptical that any additional allegations could establish that the '530 Patent is directed to patent eligible subject matter, it cannot definitively say at this stage that amendment would be futile. Accordingly, the Court will grant LookSmart one opportunity to file an amended complaint.

## IV.  CONCLUSION

For the foregoing reasons, Google's motion to dismiss is granted with leave to amend. Any amended complaint must be filed within 21 days of the date of this order.

**IT IS SO ORDERED.**

Dated: June 26, 2025

	JON S. TIGAR
	United States District Judge